UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

INSURANCE COMPANY OF
GREATER NEW YORK

                Plaintiff,

             v.

MT. HAWLEY INSURANCE
COMPANY,

                Defendant.

**MEMORANDUM DECISION AND ORDER**

26-cv-445 (BMC)

**COGAN**, District Judge.

Before the Court in this insurance-coverage dispute is defendant Mt. Hawley Insurance Company's ("Mt. Hawley") motion to dismiss. Defendant's motion is granted.

### SUMMARY OF AMENDED COMPLAINT

On November 5, 2015, the owners of a penthouse in a Manhattan co-op entered into a letter of intent and contract with M2 Contracting Corporation ("M2") to perform contracting work at their home. Pursuant to the letter of intent, M2 agreed to procure commercial general liability insurance and excess liability insurance in connection with the renovation, and to add 90 Riverside Drive Corporation ("90 Riverside") – the owner of the co-op building – as an additional insured on its insurance policies. M2 also agreed to indemnify 90 Riverside for bodily, property, and economic injuries arising out of the renovation.

In 2016, Jose Luiz Martinez, a contractor for M2, fell off a ladder while working on the renovation. He sued both M2 and 90 Riverside in New York state court (the "underlying action") for negligence and various violations of the New York Labor Law. 90 Riverside eventually filed a motion for summary judgment seeking, *inter alia*, a declaration that M2 was

contractually obligated to indemnify it in the underlying action.  The court ruled in 90 Riverside's favor based on the indemnification clause in the contract between M2 and the penthouse owners.[1]

The parties in the instant action are providing defense coverage to the defendants in the underlying action: plaintiff Insurance Company of Greater New York ("GNY") insures and defends 90 Riverside, and defendant Mt. Hawley insures and defends M2.

M2 is covered by two insurance policies for the relevant time-period.  The first is a primary commercial general liability policy from Southwest Marine and General Insurance Company (the "Southwest Marine policy"), which has limits of $1,000,000 for each occurrence and $2,000,000 in the aggregate for bodily injury and property damage.  The second policy is an excess liability policy from defendant (the "Mt. Hawley policy"), which has limits of $5,000,000 for each occurrence and in the aggregate for bodily injury and property damage, subject to exhaustion of the Southwest Marine policy.  Plaintiff alleges that the Southwest Marine policy includes an endorsement naming 90 Riverside as an additional insured; plaintiff does not allege the same with respect to the Mt. Hawley policy.

On January 24, 2017, 90 Riverside tendered defense and indemnification to defendant after first tendering defense and indemnification to Southwest Marine.  Defendant disclaimed coverage on February 15, 2017, and, to this day, has not provided defense or indemnification to 90 Riverside or reimbursed plaintiff.

Plaintiff seeks a declaratory judgment that defendant must indemnify 90 Riverside for any liability in the underlying action pursuant to both (1) contractual indemnity under the contract between the penthouse owners and M2, and (2) additional insured coverage under the

---

[1] As explained below, the Court may take judicial notice of court records.

Mt. Hawley policy.  Plaintiff also seeks damages for defendant's breach of its obligations to 90 Riverside (plaintiff's purported subrogor) as an additional insured.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

Additionally, on a motion to dismiss, the Court may consider documents which are integral to the complaint, even if the documents are not incorporated by reference or attached as exhibits. Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).  "A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." Id. at 231 (internal quotation marks and citations omitted).  "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint." Id. (internal quotation marks and citations omitted); see also Udell v. Berkshire Life Ins. Co. of Am., No. 03-cv-2721, 2005 WL 1243497, at *3 n.5 (E.D.N.Y. May 25, 2005) ("Since plaintiff admittedly had knowledge of the provisions of the insurance policies and relied on such policies in bringing suit, the insurance policies, though not formerly attached

3

to the complaint or incorporated by reference therein, are properly considered on this motion to dismiss.").

Finally, the Court may take judicial notice of public court records, such as state court decisions, motions, and pleadings, on a motion to dismiss.  See Thompson v. Glob. Contact Servs., LLC, No. 20-cv-651, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021) (collecting cases).  These documents come in not for the truth of the matters they assert, but for the fact of their existence.  Id.

## I.    Additional Insured Coverage

As its second cause of action, plaintiff seeks a declaratory judgment that 90 Riverside qualifies as an additional insured under the Mt. Hawley policy and is thus entitled to defense and indemnity coverage under that policy for the underlying action.  At bottom, this is a very simple issue that requires answering just two, very simple questions.

The first question: how does the Mt. Hawley policy define "additional insured"?  Plaintiff skirts the question, but defendant answers it.  Under the Mt. Hawley policy's "Additional Insured Endorsement":

> A person or organization who is an additional insured under the underlying insurance qualifies as an insured under this policy only if such person or organization and the named insured under the underlying insurance entered into a written agreement signed by both parties prior to the date of "occurrence" or offense, requiring additional insured coverage for such person or organization under the named insured's commercial general liability coverage.

Thus, for 90 Riverside to qualify as an additional insured under the Mt. Hawley policy (which was issued to M2 as the named insured), there must be a written contract, or "contractual privity," between 90 Riverside and M2.

4

The second question: is there contractual privity between 90 Riverside and M2?  The answer is clearly no: nowhere is it alleged in the amended complaint or argued in plaintiff's opposition papers.[2]

Plaintiff tries to confuse the issues by pointing to what M2 was *supposed* to do.  There is no dispute that M2 was *supposed* to add 90 Riverside as an additional insured on its insurance policies, consistent with its promise to the penthouse owners.  And it appears that M2 partly made good on that promise by adding 90 Riverside as an additional insured on the Southwest Marine policy.  But there is no allegation that M2 *actually added* 90 Riverside as an additional insured on the Mt. Hawley policy – either expressly in the Mt. Hawley policy, or by entering into a separate contract that would cause 90 Riverside to be covered by the policy's Additional Insured Endorsement.

Perhaps M2 breached its duty to 90 Riverside as a third-party beneficiary of M2's contract with the penthouse owners.  But that's not defendant's problem.  That M2 had a contractual duty to obtain insurance for 90 Riverside but failed to do so "does not modify the [Mt. Hawley] policy to say something that it does not."  See Cincinnati Ins. Co. v. Harleysville Ins. Co., 709 F. App'x 71, 74 (2d Cir. 2017).  Because 90 Riverside is not an additional insured under the Mt. Hawley policy, the second cause of action fails.  See, e.g., Ohio Sec. Ins. Co. v. Arch Specialty Ins. Co., No. 24-cv-07128, 2026 WL 866441, at *6 (S.D.N.Y. Mar. 30, 2026) (finding no duty to defend where there was similar policy language and lack of contractual privity) (collecting New York state court cases).

---

[2] If such a contract existed, surely plaintiff would have mentioned it.  After all, following the initial status conference, the Court directed defendant to provide plaintiff with any documents which would establish privity of contract between 90 Riverside and M2.

5

## II.    Contractual Indemnity

Plaintiff's first cause of action is predicated on the state court's judgment in the underlying action.  In the underlying action, 90 Riverside argued that it was entitled to full contractual indemnification from M2 for claims relating to the penthouse renovation.  The court concluded that M2 "failed to raise a triable issue of fact as to whether the contractual indemnification clause [was] enforceable."  The court thus granted 90 Riverside's motion for summary judgment on its cause of action for contractual indemnification against M2.

In plaintiff's view, because the state court found that M2 had to indemnify 90 Riverside, defendant (as M2's insurer) has to indemnify plaintiff (as 90 Riverside's insurer).  This argument is not logically sound.  The Court agrees with defendant: whether 90 Riverside is owed contractual indemnification from M2 under the contract between M2 and the penthouse owners is a separate and distinct question from whether 90 Riverside is entitled to coverage from the Mt. Hawley policy.

If the first cause of action is not based on a logical fallacy, then it falls with the second cause of action.  The only way that plaintiff could plausibly argue that defendant owes plaintiff based on the state court judgment is if there was coverage for 90 Riverside under the Mt. Hawley policy.  In this hypothetical scenario, plaintiff could then argue that since the state court said that M2 must indemnify 90 Riverside, and since the Mt. Hawley policy says that defendant will cover M2 as named insured and 90 Riverside as additional insured, it follows that defendant must step in to indemnify 90 Riverside for M2.  (Perhaps the argument would still fail, but it would at least make some sense.)  However, as explained in Section I, there is no coverage for 90 Riverside under the Mt. Hawley policy.  Therefore, if the first cause of action isn't nonsensical, it still fails for the reasons that the second cause of action fails.

6

### III.     Breach of Contract

The third cause of action warrants little discussion, particularly because plaintiff abandoned it in its opposition papers.  See Robinson v. Fischer, No. 09-cv-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim.")  Even if that weren't the case, how could plaintiff plausibly plead a breach of contract claim without pleading the existence of a contract between it and defendant?  This claim was frivolous from the start.

### CONCLUSION

Defendant's motion to dismiss is granted.


**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.


Dated: Brooklyn, New York
       May 26, 2026

7